JOHN O'CONNOR
O'Connor & Associates
One Embarcadero Center, Suite 1020
San Francisco, CA 94111
Telephone: 415-693-9960
Facsimile: 415-981-0222

BRUCE A. SINGAL
DAMIEN C. POWELL
Donoghue, Barrett & Singal, P.C.
One Beacon Street
Boston, MA 02108
Telephone: (617) 720-5090
Facsimile: (617) 720-5092

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

U.S. SMALL BUSINESS
ADMINISTRATION, as Receiver for
PROSPERO VENTURES, L.P,

     Plaintiff,

v.

JANE C. SLOANE,

     Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 07-03732 VRW

Related Cases:
C07-03739-VRW; C07-03736-VRW;
C07-03737-VRW; C07-03738-VRW;
C07-03741-VRW

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO STRIKE, OR,
ALTERNATIVELY MOTION FOR
JUDGMENT ON PLEADINGS**

[Filed concurrently with Opposition to Motion,
and Proposed Order]

Date of Hearing: May 8, 2008
Time: 2:30 p.m.
Ctrm: 6, 17th Floor

i

# TABLE OF CONTENTS

<u>**Page No.**</u>

INTRODUCTION…………………………………………………………...........2

STATEMENT OF FACTS…………………………………………………...........3

A.    The Various Roles Of The SBA………………………………….…………3

B.    Prospero's Failure……………………………………………………...........3

ARGUMENT…………………………………………………………………...........4

A.    There Are Basic Facts In Disputes Which Make Judgment
       On The Pleadings Improper…………………………………………...........4

B.    Defendant's Affirmative Defenses Based On The SBA's
       Wrongful Conduct In Various Capacities Are Valid…………………….…5

       1.    SBA's Motion To Strike Is Premature As Defendant
             Has Not Had A Full Opportunity To Take Discovery……………...........5

       2.    The Artificial Distinction That SBA Has Drawn Between
             Its Various Roles Is Not a Basis For Striking Defendant's
             Affirmative Defenses…………………………………………………...........7

       3.    The Discretionary Function Exception Does Not Bar
             Defendant From Raising Affirmative Defenses…………………..……11

       4.    The Individual Affirmative Defenses Provide Fair Notice
             to Plaintiff……………………………………………………………...........13

C.    Defendant's Affirmative Defenses Challenging the Invalidity of
       Regulations Are Valid………………………………………………...........14

CONCLUSION…………………………………………………………………...........15

# TABLE OF AUTHORITIES

**Page No.**

Cases

*Buckhannon & Northern R.R. Co. v. Davis* 135 Fed. 707(1905)          8

*Calmar, Inc. v. Emson Research, Inc.*, 850 F.Supp. 861 (C.D. Cal. 1994)    6

*Coy v. Title Guarantee & Trust Co.*, 157 F. 794 (D. Ore. 1907)        8

*Envicon Equities Corp.*, 744 F.2d at 939(S.D.N.Y. 1969)          5

*FDIC v. Gladstone*, 44 F. Supp. 2d 81 (D. Mass. 1999)          11, 12

*FDIC v. O'Melveny & Myers*, 61 F.3d 17 (9th Cir. 1995)          10

*Guardians Ass'n v. Civil Service Com'n of City of New York*,
463 U.S. 582 (1983)                          15

*Laube v. Seattle Taxicab Co.*, 132 Wash. 32 (1924)            8

*Limone v. United States*, 271 F.Supp.2d 345 (D. Mass. 2003)        12

*Manhattan Gen. Equip Co. v. Comm'n,* 297 U.S. 129 (1935)        15

*Rogers v. McDorman*, -- F.3d --, 2008 WL 711872 (C.A.5 (Tex.)      14

*United States v. Green*, 33 F. Supp. 2d 203(W.D. N.Y. 1998)        5

*William, Salcer, Panfeld, Edelman v. Envicon Equities Corp.*,
744 F.2d 935, 939 (2d Cir. 1984)                    5

*Woodfield v. Bowman*, 193 F.3d 354 (5th Cir. 1999)          13

*Wyshak v. City Nat. Bank*, 607 F.2d 824 (9th Cir. 1979)          14

Statutes

13 C.F.R. § 107.1820                          3

13 C.F.R. § 107.1830                          3

15 U.S.C. § 661 et. seq.                        15

28 U.S.C.A.  959(a)                                                    8

28 U.S.C. § 2680(a)                                                    11

<u>Rules</u>

Fed. R. Civ. P. 8(c)                                                   13

Fed. R. Civ. P. 15(a)                                                  6

Fed. R. Civ. P. 56(f)                                                  6

<u>Other</u>

California Jurisprudence 3d, Discovery and Depositions § 20            6

9 C.J.S. Banks and Banking § 177                                       3

35A C.J.S. Federal Civil Procedure §506                               5

91 C.J.S. United States § 245                                          12

5C Wright & Miller, *Federal Practice & Procedure* § 1381 (2d ed. 1990)   13

1

JOHN O'CONNOR

2

O'Connor & Associates
One Embarcadero Center, Suite 1020

3

San Francisco, CA 94111
Telephone: 415-693-9960

4

Facsimile: 415-981-0222

5

BRUCE A. SINGAL

6

DAMIEN C. POWELL
Donoghue, Barrett & Singal, P.C.

7

One Beacon Street

8

Boston, MA 02108
Telephone: (617) 720-5090

9

Facsimile: (617) 720-5092

10

11

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

12

13

14

U.S. SMALL BUSINESS

15

ADMINISTRATION, as Receiver for
PROSPERO VENTURES, L.P,

16

17

                                        Plaintiff,

18

v.

19

JANE C. SLOANE,

20

                                        Defendant.

21

22

23

24

25

26

27

28

|  |  |
|---|---|
| ) | CASE NO. 07-03732 VRW |
| ) | |
| ) | Related Cases: |
| ) | C07-03739-VRW; C07-03736-VRW; |
| ) | C07-03737-VRW; C07-03738-VRW; |
| ) | C07-03741-VRW |
| ) | |
| ) | **MEMORANDUM OF POINTS AND** |
| ) | **AUTHORITIES IN SUPPORT OF** |
| ) | **DEFENDANT'S OPPOSITION TO** |
| ) | **PLAINTIFF'S MOTION TO STRIKE, OR,** |
| ) | **ALTERNATIVELY MOTION FOR** |
| ) | **JUDGMENT ON PLEADINGS** |
| ) | |
| ) | [Filed concurrently with Opposition to Motion, |
| ) | and Proposed Order] |
| ) | |
| ) | Date of Hearing: May 8, 2008 |
| ) | Time: 2:30 p.m. |
| ) | Ctrm: 6, 17th Floor |
| ) | |

1

Jane C. Sloane (the "Defendant") submits the following Memorandum and Points of Authority in support of Defendant's Opposition to Plaintiff's Motion to Strike affirmative defenses, or in the alternative, judgment on the pleadings.

## INTRODUCTION

Defendant is a former limited partner of in Prospero Ventures L.P. ("Prospero"), a small business investment company. (Complaint, ¶7)  Defendant invested $68,613.86 in Prospero. This money has now been lost, in part, because of the wrongful conduct of the United States Business Administration ("SBA").  The SBA, now acting as receiver, is attempting to force the Defendant to pay it an additional $79,721.68.  Complaint ¶17.  In an effort to vindicate his rights and defend against this suit, Defendant has asserted affirmative defenses based on the SBA's wrongful conduct in a number of respects and in various capacities.  Now, before the Defendant has had an opportunity to take discovery, the SBA has moved to strike defendant's affirmative defenses and for judgment on the pleadings.  The SBA's motion is without merit for a number of reasons.  First, the pleadings leave in sharp dispute the core elements of breach of contract. Thus, judgment on the pleadings is plainly inappropriate.  Second, the Defendant's affirmative defenses regarding the SBA's wrongful conduct in various capacities are legally sufficient, are fact-based, and cannot be stricken at the outset of the case, before Defendant has had the opportunity to conduct discovery.  Finally, the arguments raised in the SBA's motion have no effect on the Defendant's affirmative defenses regarding the validity of the regulations.   In short, the SBA is seeking to short circuit discovery and effectively to bring a premature summary judgment motion long before its time.

## STATEMENT OF FACTS

### A.    The Various Roles Of The SBA

The SBA is an Agency of the United States of America, with its principal offices at 409 Third Street, S.W., Washington, DC 20416.  See Complaint ¶3.  Although the SBA is a single unitary entity, it has interacted with Prospero and the Defendant in several different capacities. SBA initially acted as the licensor of Prospero upon Prospero's application for licensure as a Small Business Investment Company ("SBIC").  After its approval of Prospero's license, SBA became the regulator of Prospero and exercised regulatory authority over the Partnership. Exhibit A to Complaint, §6.5.  At this same time, SBA also became a preferred limited partner of Prospero.  Exhibit A to Complaint, §1.22.  Subsequently, SBA was appointed receiver of Prospero to satisfy the claims of creditors.  Complaint ¶12.  And finally, SBA currently is, on information and belief, the largest, and possibly only, third-party creditor of Prospero.

### B.    Prospero's Failure

Following the burst of the high-technology bubble in 2000 and 2001, a significant number of Participating Securities SBICs, including Prospero, sustained investment losses.  In late 2001, Prospero suffered significant losses to its portfolio, and SBA notified Prospero that it had a condition known as "capital impairment" under the SBIC regulations.  See 13 C.F.R. § 107.1830.  Once notified of the capital impairment, the SBA informed Prospero that it would have an opportunity to cure its impairment.  See 13 C.F.R. § 107.1820.  Thereafter, over the course of the next two years, Prospero and the limited partners, including the Defendant, made numerous proposals, consistent with the applicable regulations that would have cured Prospero's impairment through recapitalization.  Defendant has reasons to believe, and intends to further develop through discovery that SBA acted improperly by, among other things, failing to give

3

Prospero an opportunity to cure its impairment, breaching is obligations to its fellow limited

partners, and putting itself in the position of receiver out of self interest and despite its conflicts

of interest.

## ARGUMENT

**A.      There Are Basic Facts In Dispute Which Make Judgment On The Pleadings Improper**

The basic elements of SBA's breach of contract claims remain in dispute based on the

parties' pleadings.  Complaint ¶¶10-11, 16-17; Answer ¶¶10-11, 16-17.  The Defendant has

denied that he committed to contribute $137,227.72 to the Prospero Partnership.  Complaint ¶10;

Answer ¶ 10.  There also has been no admission by the Defendant that he paid only one-half of a

capital commitment. Complaint ¶11; Answer ¶ 11.[1]  Defendant has also denied that he breached

the partnership agreement by failing to pay a capital contribution despite demand.  Complaint

¶16; Answer ¶16.  Finally, Defendant denied that he was indebted to the SBA in the sum of

$79,721.68 on November 30, 2006, together with interest.  Complaint ¶17, Answer ¶17.  Thus,

even if there was not a single affirmative defense asserted against the SBA, there would remain

sharply disputed facts that make judgment on the pleadings improper.  If the SBA believes that it

has resolved these fact disputes once discovery has been completed, then at that time summary

judgment would be the appropriate vehicle for it to pursue.

_____

[1] The SBA tries to overcome the pleading deficiencies by referencing the Joint Case Management Statement.  (See Plaintiff's Motion, p. 6).  However, the Joint Case Management Statement does not resolve the elements of the SBA's breach of contract claim.  It states that one of the principle factual issues is "whether [the Defendant] paid the second half of the capital commitment in the amount of $68,613.86." (Joint Case Management Statement, p. 1).

**B.     Defendant's Affirmative Defenses Based On The SBA's Wrongful Conduct In Various Capacities Are Valid**

      1.     SBA's Motion To Strike Is Premature As Defendant Has Not Had A Full Opportunity To Take Discovery

By its terminally early motion to strike, the SBA seeks to eviscerate at the starting gate the Defendant's fact-based affirmative defenses. This would have the untoward effect of denying the Defendant his day in court before he has had a full opportunity for discovery. The SBA's principal contention is to the legal sufficiency of the affirmative defenses. At this early stage of the litigation, however, this contention is premature and without merit.

A motion to strike an affirmative defense under Federal Rule of Civil Procedure 12(f) for legal insufficiency is not favored and will not be granted "unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *William, Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015. "Moreover, even when the facts are not disputed, several courts have noted that a 'motion to strike for insufficiency was never intended to furnish an opportunity for the determination of disputed and substantial questions of law.'" *Envicon Equities Corp.*, 744 F.2d at 939 (quoting *Carter-Wallace, Inc. v. Riverton Laboratories, Inc.*, 47 F.R.D. 366, 367 (S.D.N.Y. 1969).

This is particularly true "when [the motion to strike] requires determination of disputed or substantial issues of law **prior to discovery**." 35A C.J.S. Federal Civil Procedure §506; *United States v. Green*, 33 F. Supp. 2d 203, 203(W.D. N.Y. 1998); *Envicon Equities Corp.*, 744 F.2d at 939 (emphasis added). Furthermore,

      even when the defense seems to present a purely legal question, federal courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as best determined only after

further development by way of discovery and hearing on the merits, either on a summary judgment motion or at trial. (Wright & Miller, 5C Fed. Prac & Proc. Civ.3d § 1381)

In the present case, the SBA seeks to bypass discovery and leapfrog to summary judgment. By doing so, it ignores the proper role of discovery. For it is the function of discovery for both sides to flesh out facts for their own claims and defenses and for the claims and defenses of their opponent. See California Jurisprudence 3d, Discovery and Depositions § 20 ("Discovery necessarily serves the function of 'testing the pleadings,' that is, enabling a party to determine what an opponent's contentions are and what facts the opponent relies upon to support those contentions"). Only after both sides have had this opportunity is it appropriate and timely for a party to challenge the sufficiency of the other side's contentions. See Fed. R. Civ. P. 56(f). Here, the SBA has filed its motion before the Defendant has had an opportunity to pursue the factual basis of his defenses. Moreover, there also may be additional defenses that Defendant has yet to discover that will become apparent through discovery. See Fed. R. Civ. P. 15(a); *Calmar, Inc. v. Emson Research, Inc.*, 850 F.Supp. 861, 864 (C.D. Cal. 1994). Because SBA's various interests and obligations as limited partner, regulator, receiver, and third-party creditor are so at odds with each other, it is especially important that the Defendant have a full opportunity to conduct discovery to examine whether SBA's actions in one capacity – for example as receiver – have been improperly influenced by self interest as a result of its pervasive involvement in other capacities.

2.    The Artificial Distinction That SBA Has Drawn Between Its Various Roles <u>Is Not a Basis For Striking Defendant's Affirmative Defenses</u>

The Defendant has asserted various affirmative defenses based on the SBA's conduct which clearly must remain at this stage of the litigation.  See Answer, First, Second, Third, Fourth, and Seventh Affirmative Defenses.  Based on the information presently available to the Defendant that has to be developed and refined through discovery, Defendant asserts that SBA acted improperly, in a number of respects and capacities, any number of which would affect Defendant's obligations under the limited partnership agreement.  See Answer, p. 3-4. Defendant contends that the SBA acted improperly by, among other things, failing to give Prospero an opportunity to cure its impairment, breaching is obligations to its fellow limited partners, and putting itself in the untenable position as receiver of collecting money for itself, and otherwise acting as receiver out of self interest and from conflict of interest.

The SBA attempts to avoid any responsibility for its prior bad acts by claiming that those actions should only be attributed to it in its role as Regulator or Preferred Limited Partner.  This argument is entirely without merit because the SBA's roles and interests are so hopelessly tangled and conflicted that no clear line can be drawn between them.  Indeed, conflicts of interest pervade this entire case. A conflict of interest existed between SBA's roles as preferred limited partner and as Regulator.  A conflict of interest also existed between SBA's roles as preferred limited partner and receiver.  And a conflict of interest exists between SBA's current roles as receiver and third-party creditor.  It is these conflicts, arising from the competing interests and obligations, which are at the heart of many of the Defendant's affirmative defenses and which make separating SBA's role impossible to do, especially prior to the completion of discovery. And at the heart of such conflict of interest is the SBA's <u>current</u> role as receiver.

In moving to strike, the SBA also tries to portray itself as a typical disinterested receiver of a failed company that has had a lawsuit brought against it. This depiction of itself is inaccurate and fails to take into account both the unique set of circumstances of this case and SBA's inherent conflict of interest. The general rule is that the receiver should be an impartial party that has had no prior involvement with the failed business. See *Coy v. Title Guarantee & Trust Co.*, 157 F. 794, 796-797 (D. Ore. 1907); see also 9 C.J.S. Banks and Banking § 177. This clearly is not the case here. Likewise, the typical receiver is not in a position where its impartiality has been undermined because of its previous involvement in the business. *Coy*, 157 F. at 796 ("Where the officers and directors of an insolvent concern have, by their bad management, contributed to its ill success, it is not deemed expedient or proper that one of them should be named as a receiver"). Here, in contrast, the Defendant contends that the party who is now the receiver caused the company to go into receivership and caused the debt for which the receiver now asserts a claim. It also is not the case in the normal receivership action that the receiver has self-interest in the outcome of the receivership. See *Laube v. Seattle Taxicab Co.*, 132 Wash. 32 (1924) ("The general rule seems to be that a person should not be appointed as a receiver who by such appointment would be in a dual position . . . . A receiver should be one who will guard equally and impartially the rights of all"). Here, in contrast, SBA is the largest third-party creditor. Finally, the Defendant is not bringing a claim against the receiver (compare 28 U.S.C.A. 959, subdivision (a); *Buckhannon & Northern R.R. Co. v. Davis* 135 Fed. 707, 711(1905) (relied on by SBA), but is instead simply raising defenses against a claim brought against him by the receiver. Thus, because this case is so rife with conflict, and the Defendant is defending against, instead of prosecuting, a claim, the SBA's conduct in each of its roles – and the tangled relationship between them – is relevant and indeed central to the dispute. Like any

other party who is sued, the Defendant must be given an opportunity to defend himself by fleshing out and refining these defenses through the discovery process.

Moreover, SBA's principal contention that its own conduct can not be attributed to itself belies the unitary nature of the Small Business Administration. SBA is a single Federal Agency that is involved in a number of different programs and acts in a number of different capacities. Simply because the SBA acts in a number of different capacities, however, does not, as the SBA assets, change the fact that each of its actions are taken by the SBA. Thus, the SBA cannot now subdivide itself for its own convenience in this litigation.

Without any support on the fact of the Defendant's affirmative defense, the SBA tries to contort these defenses so they are confined to the SBA's role as regulator, pre-dating its role as receiver. Putting aside the fact that it is one SBA that cannot engage in such artificial bifurcation to fit its current legal needs, these defenses are not so confined, and extend to the SBA's conduct in all of its interrelated capacities. One form of such misconduct is the SBA's actions in petitioning to be appointed receiver, knowing of its hopelessly tangled and conflicting roles, and in acting as receiver, out of self interest, despite these roles. The inherent conflict that exists between SBA's current roles as receiver and third-party creditor calls into question its impartiality as receiver. In light of this conflict, and the SBA's prior wrongful conduct, the Defendant should be entitled to examine, through discovery, how the SBA's self interest is affecting its actions as receiver vis a vis the Defendant.

In addition, raising defenses against the SBA, based on the SBA's own conduct, is equitable and consistent with the purpose of the regulatory scheme relating to receiverships. Compare *FDIC v. O'Melveny & Myers*, 61 F.3d 17, 18 (9th Cir. 1995). A comparison of the present case to *O'Melveny & Myers* illustrates this point. In *O'Melveny & Myers,* the Ninth

Circuit considered whether a bank's inequitable conduct should be imputed to the FDIC as receiver.  Based on two separate considerations, the court determined that banks inequitable should not be imputed.  The court first stated that "[w]hile a party may itself be denied a right or defense on account of its misdeeds, there is little reason to impose the same punishment on a trustee, receiver or similar **innocent party** that steps into the party's shoes pursuant to a court order or operation of law." *Id* at 19 (emphasis added).  "A receiver, like a bankruptcy trustee and unlike a normal successor in interest, does not voluntarily step into the shoes of the bank; it is thrust into those shoes. *Id.* It was neither a party to the original inequitable conduct nor is it in a position to take action prior to assuming the bank's assets to cure any associated defects or force the bank to pay for incurable defects." *Id.* This stands in stark contrast to the SBA's role here.

The court's second consideration was whether imputing conduct to the receiver would unfairly injure third-party creditors. *Id.* The court stated: "Also significant is the fact that the receiver becomes the bank's successor as part of an intricate regulatory scheme designed to protect the interests of third parties who also were not privy to the bank's inequitable conduct." *Id.* "That scheme would not be frustrated by imputing the bank's inequitable conduct to the receiver, thereby diminishing the value of the asset pool held by the receiver and limiting the receiver's discretion in disposing of the assets." *Id.*

When these same considerations are examined here, it is clear that SBA's conduct, in all of its roles, is relevant to the present controversy.  First, the issue in the present case is not whether another party's conduct should be imputed to the receiver.  Rather, the SBA is claiming that its own inequitable conduct should not be at issue.  Moreover, this is not a situation where the SBA was thrust into the Prospero's shoes.  Instead, SBA not only willingly stepped into this

role as receiver, but it thrust Prospero into receivership and is at fault for the present situation.

Finally, this isn't a case where an innocent third party will be punished by imputing another

party's inequitable conduct to the Receiver.  On information and belief, SBA is the largest, if not

only, third-party creditor who will recover money from this action, based on its own oversight

role as receiver.[2]

> 3.    The Discretionary Function Exception Does Not Bar Defendant From <u>Raising Affirmative Defenses</u>

The SBA also asserts that the discretionary function exception to the Federal Torts

Claims Act (28 U.S.C. § 2680(a)) ("FTCA") mandates the striking of Defendant's affirmative

defenses.  This contention also does not provide a basis for striking the affirmative defenses,

particularly at this early stage of the litigation.

The discretionary function exception to the FTCA does not prevent the Defendant from

raising affirmative defenses against the SBA.  (See *FDIC v. Gladstone*, 44 F. Supp. 2d 81, 88 (D.

Mass. 1999).  Rather, the FTCA only prevents parties from bringing "claims" against the

government based on discretionary conduct.  28 U.S.C. § 2680(a) (agency such as the SBA is

protected by sovereign immunity against "**[a]ny claim** . . . based upon the exercise or

performance or the failure to exercise or perform a discretionary function or duty on the part of a

federal agency." (emphasis added); see 91 C.J.S. United States § 245 ("When the United States

institutes a suit for redress and submits a claim wholly in the nature of a private litigant, its

adversary is entitled to set up any defense which would be available if the opponent were another

citizen instead of the government . . ..").

---

[2] The SBA is likely to contend that portions of this decision favor its position.  However, any contentions made by the SBA pale in comparison to the central point of the case which is that it is only because of the innocent nature of the FDIC's conduct, that equitable defenses were not allowed to be brought against it.

In *Gladstone*, the Court stated:

> [T]here are significant differences between suing [a federal agency] and asserting affirmative defenses against [it]. The FTCA only limits suits against the Government; it does not preclude state law affirmative defenses when the Government brings state law claims. *See e.g. United States v. Forma*, 42 F.3d 759, 765 (2d Cir. 1994) ("a party sued by the United States may recoup damages . . . so as to reduce or defeat the government's claim . . . though no affirmative judgment . . . can be rendered against the United States." 44 F. Supp. 2d at 88.

In the instant case, SBA brought the claim against the defendant, not the other way around. The Defendant is not seeking any affirmative relief, but is instead simply defending against a claim. The FTCA does not preclude the Defendant from raising affirmative defenses.

Moreover, by seeking to the protective cloak of governmental immunity, the SBA is trying to have it both ways. On the one hand, it says its current role as receiver is dintinct from its role as federal regulator, and simply allows it to stand in the shoes of Prospero (a private party), as if it were Prospero. Yet in the same breath, it seeks the insulation available to it only if it were the Federal Regulator (and if it were sued, rather than suing). This attempted blending of its roles illustrates graphically the futility of seeking to sever and distinguish each of the SBA's four related roles in this transaction.

Moreover, to the extent that the SBA claims that Defendant is challenging discretionary acts, it is premature for the court to make this determination as the Defendant has not had a full opportunity to conduct discovery. See *Limone v. United States*, 271 F.Supp.2d 345, 356 (D. Mass. 2003.) Defendant, for example, intends to take discovery relating to SBA's internal policies and procedures to determine whether SBA complied with its own mandatory or regulation. See *Limone*, 271 F.Supp.2d at 356 ("[I]t would be premature to find . . . conduct 'discretionary prior to the discovery of internal [Agency] procedures which might bear on that

conduct. The Defendant also intends to take discovery to determine whether the SBA, in its role as receiver, has benefited or stood to benefit from its other conflicting roles.

4.    The Individual Affirmative Defenses Provide Fair Notice to Plaintiff

SBA also repeatedly asserts throughout its motion that Defendant's affirmative defenses are insufficiently pled and should therefore be stricken. By making this contention, SBA is doing violence to the notice pleading requirements under the federal rules and ignoring the proper role of discovery.

"Motions to strike a defense as insufficient are not favored by the federal courts because of their somewhat dilatory and often harassing character." 5C Wright & Miller, *Federal Practice & Procedure* § 1381 (2d ed. 1990). This is especially true in situation such as this where the challenge to the sufficiency of the pleading is done at such an early stage.

Under the Federal Rules of Civil Procedure, an affirmative defense must provide fair notice to the other party of the defense being raised. Fed. R. Civ. P. 8(c); *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). The concern behind the fair notice rule is that "[a] defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." *Rogers v. McDorman*, -- F.3d --, 2008 WL 711872 (C.A.5 (Tex.) (quoting *Ingraham v. United States*, (5th Cir. 1987) 808 F.2d 354, 362) "Where the [affirmative defense] is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal." *Id.*, (quoting *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983).

Here, there cannot be any argument that the Defendant is attempting to ambush the SBA with any unexpected defense. Each of the affirmative defenses is sufficiently precise, subject to discovery, and they are not confined to pre-receiver actions. As the cases cited by the SBA make

clear, the issue of "fair notice" generally arises at trial when a party attempts to bring up a new

claim or defense that is not set out in the party's pleading. (See *Rogers*, -- F.3d --, 2008 WL

711872 (C.A.5 (Tex.).  It is generally not an issue that arises at the initial stages of a case, like

here, because it is the function of discovery to clarify an opposing party's claims and defenses.

To the extent that the court deems that any affirmative defense is insufficiently pled, Defendant

requests leave to replead the defense.  See Fed. R. Civ. P. 15(a); *Wyshak v. City Nat. Bank*, 607

F.2d 824, 826 (9th Cir. 1979).

C.    **Defendant's Affirmative Defenses Challenging the Invalidity of Regulations <u>Are Valid</u>**

       The Defendant has established that disputed facts exist relating to the elements of the

SBA's breach of contract claim, thus preventing any judgment on the pleadings.  He has also

shown that his affirmative defenses relating to SBA's conduct in various capacities, including as

receiver, cannot be stricken.  In addition, none of the SBA's arguments in its motion impair the

Defendant's challenges to the SBA's regulations in the Fifth, Sixth and Eighth Affirmative

Defenses, as the capacity of the Plaintiff has no effect on a statutory challenge.

       Thus, under these defenses, the SBA has no enforceable contractual rights against the

Defendants because certain of the SBA regulations which underpin this regulatory scheme are

invalid as unreasonable exercises of power under the Small Business Equity Enhancement Act of

1992, 15 U.S.C. § 661 et. seq.  See *Manhattan Gen. Equip Co. v. Comm'n,* 297 U.S. 129, 134

(1935) (stating that an agency's power to administer federal law and prescribed rules "is not the

power to make law, for no such power can be delegated by Congress, but the power to adopt

regulations to carry into effect the will of Congress as expressed by the statute"); *Guardians*

*Ass'n v. Civil Service Com'n of City of New York,* 463 U.S. 582, 614 n.2 (1983) ("A regulation

which does not carry into effect the will of Congress as expressed by the statute, but operates to

14

create a rule out of harmony with the statute, is a mere nullity"). Defendant anticipates that these challenges to the regulations will be subject to later briefing and hearing at the appropriate time.

## CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that the Court deny the Plaintiff's motion to strike, or alternatively, motion for judgment on the pleadings.

Dated:   April 22, 2008                              DONOGHUE, BARRETT & SINGAL, P.C.

                                        By:    */s/ Damien C. Powell*
                                               Damien C. Powell
                                               Attorney for Defendant
                                               *Appearance Pro Hac Vice*


                                               O'CONNOR & ASSOCIATES
                                               John O'Connor
                                               Attorney for Defendant

15

## PROOF OF SERVICE

I, Damien C. Powell, admitted *pro hac vice* in the United States District Court, Northern District of California, declare:

I am a citizen of the United States of America and a resident of the Commonwealth of Massachusetts. I am over the age of eighteen (18) years. My business address is Donoghue, Barrett & Singal, P.C., 1 Beacon Street, Boston MA 02108. The business address of John O'Connor, Esq., the local counsel to the defendant, is One Embarcadero Center, Suite 1020, San Francisco, California 94111.

On April 22, 2008, I served the foregoing document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE, OR, ALTERNATIVELY MOTION FOR JUDGMENT ON PLEADINGS** on the interested parties, at the addresses as stated below.

**Via First Class Mail:**

**Arlene P. Messinger**
US Small Business Administration
409 3rd Street, SW, 7th Floor
Washington, DC 20416
202-205-6857

**Via Electronic Mail:**

**Christine Jean Levin**
Coleman & Horowitt, LLP
499 W. Shaw Avenue
Suite 116
Fresno, CA 93704
559-248-4820
Email: clevin@ch-law.com

**Darryl J. Horowitt**
Coleman & Horowitt, LLP
Attorneys at Law
499 West Shaw Avenue
Suite 116
Fresno, CA 93704
559-248-4820
Fax: 559-248-4830
Email: dhorowitt@ch-law.com

**Via Federal Express Overnight:**

Hon. Vaughn R. Walker
U.S. District Court, Northern District
450 Golden Gate Avenue
San Francisco, CA 94102

     I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 22, 2008, in Boston, Massachusetts.


                      *Damien C. Powell*
                      Damien C. Powell